ARGUED AND DETERMINED

AT

# NISI PRIUS.

NOVEMBER SITTINGS, 1807.

CORAM SPENCER, J.

----•◆•----

### BAKER *against* ELIZA METZLER.

Cohabitation and reputation, sufficient *prima facie* evidence of marriage.
If, in connection with such evidence, it appears that the parties actually celebrated a marriage, this rebuts the conclusion that the former state was other than meretricious.

ASSUMPSIT for not accounting, &c.

Plea, the general issue, with notice of coverture, &c.

It appeared in evidence that Joseph Metzler was the reputed husband of the defendant, but that it was generally known, among their acquaintance, that they were not actu-

ally married. Under these circumstances, the plaintiff had delivered to the defendant certain goods to sell for him on commission, for which she had never rendered him an account, and for which this action was brought. At this time, there was also a running account between the plaintiff and Joseph Metzler, which account, however, was balanced by equal claims. Joseph Metzler, having become insolvent, the plaintiff signed off for him, under the insolvent act, his side of the running account. It also appeared that, pending this action, Joseph Metzler and Eliza Metzler were duly and formally married.

The defendant's counsel contended: 1st. That they had sufficiently proved a marriage *de facto*, between Joseph Metzler and Eliza Metzler, at the time the goods in controversy were delivered to the latter for sale, the law requiring no solemnities *in facie ecclesiæ* to constitute a marriage.

2nd. That there was sufficient evidence before the jury to enable them to infer that, when the plaintiff signed off his side of the account in behalf of Joseph Metzler, it was the understanding and agreement of the parties, that the claim of Joseph Metzler, against the plaintiff, should be considered as balancing his claim against the defendant.

SPENCER, J. Our laws, relative to marriage, are loose enough, and I am not inclined to make them more so. There are but two cases in which proof of actual marriage is required, viz.: bigamy and *crim. con.* In other cases, cohabitation is *prima facie* proof of marriage. Where a man allows a woman to hold out false colors, by using his name, &c., he must take the consequences. The defendant, however, might have rested her defence, after proving cohabitation and reputation; and the plaintiff would then have

Baker v. Metzler.

been compelled to rebut the conclusion : but here the defendant's testimony has refuted the inferrence.(1)

As to the second point of the defence, the presumption insisted upon is too remote ; if there was such an arrangement, it would have been, if anything, an accord and satisfaction : of this there is no proof.

Verdict for the plaintiff.

(1) The law on this subject will be found in the case of *Fenton* v. *Reed*, 4 Johns. 53. In that case, it appeared that a husband had left his wife, in 1785, in the city of New York, and returned there, in 1792; that, during all that interval, he had not been heard of, and it was generally believed that he had died in foreign parts. Shortly, previous to the husband's return, the wife was duly married to a third person. After *the husband's return, he did not* object to the connection between the wife and the second husband, but said he had no claim upon her, and never interfered to disturb the harmony between them. The first husband died shortly after this, and the lady and her second husband continued to live together (without any new solemnization,) as man and wife, until 1806, when the second husband died. The question upon these facts was whether she was legally the widow of the second husband ? And the court held, there were circumstances enough to presume an actual marriage, after the death of her first husband. The general rules of law on this subject are thus stated, in that case : " Proof of an actual marriage was not necessary ; such strict proof is only required in prosecutions for bigamy, and in actions for criminal conversation. A marriage may be proved, in other cases, from cohabitation, reputation, acknowledgment of the parties, reception in the family, and other circumstances from which a marriage may be inferred. No formal solemnization of marriage was requisite. A contract of marriage made *per verba de presenti*, amounts to an actual marriage, and is as valid as if made *in facie ecclesiæ*."

This rule was carried to its extreme verge by the Supreme court, in *Starr* v. *Peck*, 1 Hill, 270.

In an action of ejectment, the plaintiff and defendant claimed under two children of Samuel Starr: the plaintiff, under a son born after the celebration of the marriage of the parents, *in facie ecclesiæ*, and the defendant, under a daughter, born ten days prior to such celebration. The case, therefore, turned on the legitimacy of the latter. The father was a seafaring man, and had visited the mother, in the way of courtship, for about a year previous to the celebration of the marriage. He followed the sea ; and, during his ab-

sence, she had given out that they were engaged; and they were actually married, as above mentioned, in about one week after his return, he having been detained abroad longer than he expected. The daughter so born lived with her parents until her marriage, and was always received and treated by both as their legitimate child. The judge, at the trial of the case, thought the evidence was sufficient to go to the jury, for them to say whether there had not been a legal marriage before the birth of the daughter. On this issue, the jury found affirmatively, and the court sustained the verdict.

The judge who pronounced the opinion of the court, remarked that, at common law, the parties had power to contract marriage *inter se* without the intervention of a clergyman, and that no peculiar form of words is necessary for such a contract. That a contract in words merely executory, followed by the act of the parties in lying together on the faith of such contract, is equivalent to words of present import; the circumstances are to be taken as giving a construction to the words, and renders them presently operative. He also held, that, in construing such acts and circumstances, the presumption must be against immorality, and in favor of innocence, almost as strongly as the law requires it to be against positive crime.

The common law on this interesting subject, as it existed in England before the marriage Act, has been very ably investigated by Mr. Jacob, in the Appendix to Roper on Property, and also by Sir Wm. Scott, in *Dalrymple* v. *Dalrymple*, 2 Hag. 105, 125.

The peculiar situation of this country, in which the most entire and perfect toleration prevails, seems to forbid the introduction of any religious ceremonies as essential to this condition. The language of the revised statutes of this state on this subject, expresses the only rule which can be established: " Marriage, so far as its validity in law is concerned, shall continue in this state a civil contract for which the consent of the parties, capable in law of contracting, shall be essential." 2 R. S., p. 199, 3rd ed.

Regulations of general police, tending to advance and preserve public morals, are quite consistent with this definition, and cannot be considered as trenching in the least on a wholesome religious toleration. Prohibition of incest and polygamy, and general regulations of public solemnizations, when conducted by magistrates, are of this character. These, and other provisions of a mere cautionary and protective character, where the marriage is solemnized by ministers of religion, are within the proper limits of toleration, and mark the extent of our state legislation. Ib.